IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY,<br><br>    Plaintiff/Counterclaim Defendant,<br><br>vs.<br><br>NORBERT BILLARD,<br><br>    Defendant/Counterclaim Plaintiff. | No. C10-1012<br><br>ORDER REGARDING DISCOVERY |

## TABLE OF CONTENTS

I. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. RELEVANT FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV. DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    A.    *Motion for Protective Order*. . . . . . . . . . . . . . . . . . . . . . 6
        1.    *Scope of Questioning at a Rule 30(b)(6) Deposition*. . . . . . . . . 6
        2.    *Conduct at Depositions*. . . . . . . . . . . . . . . . . . . . . . . 9
        3.    *Professional Videographer*. . . . . . . . . . . . . . . . . . . . 10
    B.    *Motion for Discovery Sanctions*. . . . . . . . . . . . . . . . . . . . 11
        1.    *Objections to the Scope of Questioning*. . . . . . . . . . . . . . 12
        2.    *Suspending the Deposition*. . . . . . . . . . . . . . . . . . . . 15

V. SUMMARY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

VI. ORDER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## I. INTRODUCTION

On the 26th day of October 2010, this matter came on for telephonic hearing on the Motion for Sanctions for Failure to Cooperate in Discovery (docket number 47) filed by the Defendant on October 9, 2010, and the Motion for Protective Order (docket number 48) filed by the Plaintiff on October 14, 2010. The Plaintiff was represented by its attorneys, Michael W. Thrall and Matthew R. Eslick. The Defendant was represented by his attorneys, David J. Van Susteren and David Louis.

## II. PROCEDURAL HISTORY

On May 6, 2010, Plaintiff American General Life Insurance Company ("AGLIC") filed a complaint against Defendant Norbert Billard, seeking a declaratory judgment for rescission of a life insurance policy issued by AGLIC on the life of Christine Cavanaugh.[1] AGLIC claims that Cavanaugh made material misrepresentations in the policy application, and asks that the Court declare the policy "void and rescinded." On June 15, 2010, Billard filed an answer, denying the material allegations contained in the complaint and asking that it be "dismissed in its entirety."

On July 6, 2010, Billard amended his answer to include certain affirmative defenses and a counterclaim. In his counterclaim, Billard asserts breach of contract, misrepresentation, and bad faith. Billard asks that judgment enter against AGLIC for $1 million, plus exemplary damages, attorney fees, and costs. AGLIC filed its answer to the counterclaim on July 27, 2010.

On September 7, 2010, the Court adopted a proposed scheduling order submitted by the parties. Among other things, the parties agreed to deadlines for disclosure of expert witnesses, completion of discovery, filing of dispositive motions, and a trial ready date. On October 9, Billard filed the instant motion for sanctions. Five days later, AGLIC filed

---

[1] Billard is the "owner" and primary beneficiary of the $1 million policy.

the instant motion for protective order. Both motions arise following the contentious deposition of Nancy Yasso on October 4, 2010.

### III. RELEVANT FACTS

On October 4, 2010, Billard's counsel, David Van Susteren, took the deposition of Nancy Yasso at his law offices in Houston, Texas. Yasso testified in response to a Rule 30(b)(6) notice served by Billard, asking that AGLIC identify a knowledgeable person to testify regarding certain subjects identified in the Rule 30(b)(6) notice. Attorney Michael Thrall appeared at the deposition on behalf of AGLIC.

The deposition commenced at 9:10 a.m.[2] The deposition continued until 4:38 p.m., when Mr. Thrall announced that "[w]e're done for the day." Mr. Thrall advised Mr. Van Susteren that "[w]e'll file a motion for protected [*sic*] order." According to Mr. Thrall, "I've suspended the deposition because of your conduct in conducting this deposition, and we'll have the magistrate judge decide that issue."[3]

The initial dispute at the deposition involved the scope of Mr. Van Susteren's questioning. Mr. Thrall repeatedly objected to questions on the basis that they were "beyond the scope of the deposition notice." On some of those occasions, Mr. Thrall instructed Yasso not to answer the question.[4] On other occasions, Mr. Thrall objected on the grounds that the question was beyond the scope of the deposition notice, but permitted the witness to answer.[5] On at least one occasion, Mr. Thrall stated that he would continue to instruct the witness "not to answer questions when they exceed the scope of the

---

[2] A transcript of the deposition was filed with the Court as docket number 52-1.

[3] *See* Deposition of Nancy Yasso, 283:2-284:6.

[4] *See, e.g., Id.* at 51:8-24.

[5] *See, e.g., Id.* at 57:6-58:19.

3

deposition notice," and suggested that "if we need to take a break and call the master [sic] judge, I'd be happy to do that."[6] However, no attempt was ever made to contact a judge.

As the deposition wore on, it became more contentious. When Mr. Thrall objected to a question on the ground that "it would call for attorney-client privileged information," Mr. Van Susteren responded that "I think you're coaching the witness." The back-and-forth continued over the next several pages of the deposition transcript, with Mr. Van Susteren concluding that "I don't want your attorney to answer. He talks too much to begin with. What I want to know is: What's your answer?"[7] Mr. Van Susteren asked Yasso on at least one other occasion whether she had been "coached,"[8] and on another occasion reminded Yasso that if she falsely testified that she did not know something which she actually knew, it was "actionable under perjury."[9]

Shortly before the deposition was suspended, Mr. Van Susteren asked Yasso: "What I want to know is if you were the insured and you had a death in the family and you sent your claim in and you wanted to know where it was and you get a letter like this and then they come to you and ask you to give a statement, do you think that's fair?"[10] Mr. Thrall responded: "Object to the form of the question, argumentative, beyond the scope of the deposition." Mr. Van Susteren asked again "[w]ould that be fair to you," and Mr. Thrall made the same objection. However, Yasso was permitted to answer. Mr. Van Susteren then asked whether the first letter sent by AGLIC to Billard – which Mr. Van Susteren

---

[6] See Id. at 60:19-23.

[7] See Id. at 116:19-120:10.

[8] See Id. at 86:12-13.

[9] See Id. at 122:2-5.

[10] See Id. at 272:2-8.

4

characterized as "a very kind letter" – was a "fair indication of where the claim is."[11] Mr. Thrall objected "to the form of the question, argumentative, compound, and beyond the scope of the deposition notice," but Yasso was permitted to answer. Yasso opined that AGLIC "does a very good job in following up and letting the client know where and what is happening with the claim file in a contestable period."[12] Mr. Van Susteren then asked whether "if one of your friends had lost their spouse and they got this letter and then American General asked them to give a recorded statement, would you think that's fair?"[13] Mr. Thrall then made the following objection:

> Okay. I'm going to object at this point in time. I'm going to ask that we suspend the deposition until I can get a judge involved to rule on this line of questioning and on this type of argumentative questioning by counsel. If you have other areas that you want to go into in the hour that you have left in your seven hours, you can certainly do that.

*See* Deposition of Nancy Yasso, 274:8-15.

The attorneys then argued over how much time was left, but the deposition was not suspended and no effort was made to contact a judge. Mr. Van Susteren then continued his questioning, asking, among other things:

> The question is: You decided to deny this claim because you didn't want to pay the million dollars. That's the question, isn't it?

*See* Deposition of Nancy Yasso, 278:20-22.

Later, Mr. Van Susteren asked Yasso whether she believed a letter sent by AGLIC was "misleading." After Mr. Thrall objected, Mr. Van Susteren persisted: "But do you

---

[11] *See Id.* at 272:25-273:10.

[12] *See Id.* at 273:14-17.

[13] *See Id.* at 274:2-7.

think as a person, this is a misleading – ." Mr. Thrall objected again and instructed the witness not to answer.[14]

Shortly after that time, Mr. Van Susteren asked Yasso "Can you think of a single claim in 2010 where you got one of these forms like Exhibit 33 in which you found that coverage exists and should be paid?"[15] Mr. Thrall objected to the question, asserting that it was argumentative and beyond the scope of the deposition notice, and instructed Yasso not to answer. Mr. Van Susteren responded, stating that the objection was "improper" and, following a back-and-forth between counsel, Mr. Thrall announced that "[W]e're done for the day" and suspended the deposition.[16]

## IV. DISCUSSION

### A. Motion for Protective Order

The Court will first consider AGLIC's motion for a protective order. AGLIC asks (1) that Yasso's deposition be terminated and questioning at future Rule 30(b)(6) depositions be limited to subjects identified in the notice, (2) the Court order Mr. Van Susteren "to abstain from mean-spirited and harassing conduct at all future depositions," and (3) that Billard be required to retain a professional videographer at all future depositions.

### 1. Scope of Questioning at a Rule 30(b)(6) Deposition

The deposition of Nancy Yasso was taken in accordance with FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6), pursuant to a first amended notice served on AGLIC. In his notice, Billard stated that he would take the deposition of the designated representative of

---

[14] *See Id.* at 279:17-22.

[15] *See Id.* at 282:5-8.

[16] *See Id.* at 282:18-284:6.

AGLIC who was most familiar with 16 identified topics.[17] In response to the notice, AGLIC designated Nancy Yasso. Billard does not claim that Yasso was unfamiliar with the topics identified in the notice and, in fact, asserts that Yasso "is and has been AGLIC's main go-to person to perform its claims review/underwriting review for all of its 'contested claims' nationwide regardless of the jurisdiction or concepts of law at issue in any of the claims."[18]

AGLIC asserts that Billard's questioning of Yasso is properly limited to those areas identified in the Rule 30(b)(6) notice. On numerous occasions throughout the deposition, Mr. Thrall objected to questions on the ground that they were "beyond the scope of the deposition notice," sometimes instructing Yasso not to answer. Billard argues, on the other hand, that the scope of questioning at a deposition is governed by FEDERAL RULE OF CIVIL PROCEDURE 26(b).

In support of its position, AGLIC cites *Paparelli v. Prudential Ins. Co. of America*, 108 F.R.D. 727 (D. Mass. 1985). There, the plaintiff took a Rule 30(b)(6) deposition of the defendant's representative. In addition to asking questions clearly within the scope of the subject matter as set forth in the notice, the plaintiff's counsel also attempted to question the witness regarding a so-called "product letter." The defendant's counsel "objected to questions relating to this document and instructed the witness not to answer the questions." *Id.* at 729. In denying the plaintiff's motion for sanctions, the Court recognized that there is nothing in the text of Rule 30(b)(6) or the advisory committee's notes which limit the scope of a Rule 30(b)(6) deposition to matters identified in the deposition notice. *Id.* Nonetheless, the Court found that "such a limitation is implied by the procedures set forth in the rule and the reasons for the rule's adoption as noted by the Advisory Committee." *Id.*

---

[17] The topics are enumerated 1-17, but it does not appear that there is any topic enumerated as number 4.

[18] *See* Billard's Motion for Sanctions, ¶ 4 at 2 (docket number 47 at 2).

7

> It makes no sense for a party to state in a notice that it wishes to examine a representative of a corporation on certain matters, have the corporation designate the person most knowledgeable with respect to those matters, and then to ask the representative about matters totally different from the ones listed in the notice.

*Id.* at 729-30. Accordingly, the Court in *Paparelli* concluded that the questioner "must confine the examination to the matters stated 'with reasonable particularity' which are contained in the Notice of Deposition." *Id.* at 730.[19]

It would appear, however, that every court which has addressed this issue since *Paparelli* has taken a different view. In *King v. Pratt & Whitney*, 161 F.R.D. 475 (S.D. Fla. 1995), the deponents at Rule 30(b)(6) depositions were asked questions that went beyond the scope of the issues described in the Rule 30(b)(6) notices. The Court identified the issue as "whether a deponent produced pursuant to a Rule 30(b)(6) notice may only be questioned regarding issues described in the notice or may be questioned as broadly as any other deponent." *Id.* at 475. After noting that "[t]he answer is not clearly found on the face of the Rules," the Court rejected the holding in *Paparelli* and concluded that "the general deposition rules govern (*i.e.*, Fed.R.Civ.P. 26(b)(1)), so that relevant questions may be asked and no special protection is conferred on a deponent by virtue of the fact that the deposition was noticed under 30(b)(6)." *Id.* at 476. The conclusion reached in *King* has been unanimously accepted by courts addressing the issue since that time. *See, e.g., Philbrick v. Enom, Inc.*, 593 F. Supp. 2d 352, 363 (D.N.H. 2009); *Detoy v. City and County of San Francisco*, 196 F.R.D. 362, 366 (N.D. Cal. 2000); *Cabot Corp. v. Yamulla Enterprises, Inc.*, 194 F.R.D. 499 (M.D. Pa. 2000); *Overseas Private Inv. Corp. v.*

---

[19] While the Court in *Paparelli* concluded that the questions were beyond the scope of the Rule 30(b)(6) notice, it also concluded that counsel improperly instructed the witness not to answer. That is, the Court found that counsel should have followed the procedure identified in FEDERAL RULE OF CIVIL PROCEDURE 30(d).

*Mandelbaum*, 185 F.R.D. 67 (D.D.C. 1999); *Edison Corp. v. Town of Secaucus*, 17 N.J. Tax 178, 182 (1998).

I adopt the majority view and find that the questioning of a Rule 30(b)(6) deponent is not limited to those subjects identified in the Rule 30(b)(6) notice. Accordingly, AGLIC's motion for a protective order in that regard will be denied. According to the deposition transcript, questioning of Yasso at the deposition extended for six hours and two minutes. Therefore, Billard will be permitted to question Yasso for one additional hour.[20] At Billard's request, Yasso's deposition shall be completed prior to any other depositions being conducted.

### 2. *Conduct at Depositions*

Next, AGLIC argues that Mr. Van Susteren's conduct at Yasso's deposition "crossed the line from bothersome to unprofessional."[21] FEDERAL RULE OF CIVIL PROCEDURE 26(c)(1) provides "[t]he court may, for good cause, issue an order to protect the party or person from annoyance, embarrassment, oppression, or undue burden or expense...." The rules relating specifically to depositions provide for similar protection:

> At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party. The motion may be filed in the court where the action is pending or the deposition is being taken. If the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order.

FED. R. CIV. P. 30(d)(3)(A).

The Court will not extend this ruling by an extensive review of the back-and-forth which occurred during Yasso's deposition. Suffice it to say that the deposition was

---

[20] *See* FED. R. CIV. P. 30(d)(1).

[21] *See* AGLIC's Brief in Support of Motion for Protective Order at 5 (docket number 48-1 at 5).

unnecessarily contentious. In his first amended motion for admission *pro hac vice*, Mr. Van Susteren agreed "to comply with all provisions and requirements of the rules of conduct applicable to lawyers admitted to practice before the state courts of Iowa." Obviously, Mr. Thrall has the same obligation. The Court encourages counsel to review the Standards for Professional Conduct, found in Chapter 33 of the Iowa Rules of Court. At all future depositions, and in their other dealings during the pendency of this action, counsel shall strictly adhere to the highest professional conduct. If a party concludes that a deposition is being conducted "in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party," then they should seek relief pursuant to FEDERAL RULE OF CIVIL PROCEDURE 30(d)(3)(A).

### 3. *Professional Videographer*

Finally, AGLIC asks that the Court order Billard to secure, at his expense, an "officer" to conduct all future audiovisual recordings of depositions. In the First Amended Notice of Deposition, Billard advised AGLIC that the Rule 30(b)(6) deposition "will be recorded stenographically and by audio/video means." When Mr. Thrall arrived at Mr. Van Susteren's office, he discovered that while a professional stenographer was present, Mr. Van Susteren intended to videotape the deposition himself. In a declaration submitted in support of AGLIC's motion for protective order, Mr. Thrall states that "I permitted Ms. Yasso's deposition to proceed to facilitate the deposition, and because a certified court reporter was otherwise present."[22] Apparently, the first hour of Yasso's deposition was inadvertently not recorded by Mr. Van Susteren. Accordingly, AGLIC asks that Billard be ordered to retain "an 'officer' to conduct all future audiovisual recordings of depositions."

AGLIC cites no authority for this proposition. Billard argues that the rules do not require employment of a professional videographer, citing *Pioneer Drive, LLC v. Nissan Diesel America, Inc.*, 262 F.R.D. 552 (D. Mont. 2009). There, the plaintiff's attorney

---

[22] *See* Declaration of Michael W. Thrall, ¶ 8 at 2 (docket number 48-2 at 2).

10

set up a small video camera with the intention of visually recording the depositions. The defendant's attorney objected, insisting on a professional videographer. The plaintiff acquiesced, hiring a videographer who "stayed for the balance of the week's depositions to the tune of about $15,000." *Id.* at 554. On the plaintiff's motion, the Court ordered the defendant to reimburse the videographer fees.

The Court concludes that Billard is under no obligation to hire a professional videographer. Billard must adhere, however, to the requirements found in FEDERAL RULE OF CIVIL PROCEDURE 30(b)(5). If the video recording fails to comply with the rules, then AGLIC may seek an appropriate protective order. *See Id.* at 555-56 ("A deposed party or counsel concerned about accuracy or image manipulation can seek a protective order, can choose an additional method to record the deposition, or can move after the fact to strike the recording.").[23]

### B. *Motion for Discovery Sanctions*

Next, the Court will consider the motion for discovery sanctions filed by Billard on October 9, 2010. Billard argues that AGLIC should be sanctioned as a consequence of Mr. Thrall "impeding, delaying, and frustrating the deposition of AGLIC's corporate representative" by wrongfully instructing Yasso to not answer deposition questions and "wrongfully suspending the deposition."[24] AGLIC responds that objections to the scope of the questioning were justified, or in any event not sanctionable, because there is "a division of authority" on the proper scope of a Rule 30(b)(6) deposition. AGLIC also

---

[23] As the Court indicated at the hearing on the instant motions, it states no opinion regarding whether Billard is prohibited from using the video deposition of Yasso as a consequence of Billard's failure to record the first portion of the deposition.

[24] *See* Billard's Motion for Discovery Sanctions, ¶ 3 at 2 (docket number 47 at 2).

11

argues that it properly invoked Rule 30(d)(3)(A) in suspending the deposition to seek a protective order.[25]

### 1. *Objections to the Scope of Questioning*

As set forth above, the Court has concluded that questioning at a Rule 30(b)(6) deposition is not limited to the subject matters found in the Rule 30(b)(6) notice. Rather, the witness is subject to the broad scope of discovery found generally in Rule 26(b)(1). The Eighth Circuit Court of Appeals has not addressed this issue, however, nor does there appear to be any district court within the Eighth Circuit that has addressed the issue. Since there is no precedential authority on this issue, and because there is at least one case which supports AGLIC's reading of Rule 30(b)(6), the Court finds that AGLIC's objections to the scope of the questioning were not for the purpose of "impeding, delaying, and frustrating" the deposition, and are not sanctionable.

In this case, however, Mr. Thrall did not simply note the objection on the record and allow the deposition to proceed. Rather, in some instances Mr. Thrall instructed Yasso not to answer. This was improper. The proper procedure is described in the Rules:

> An objection at the time of the examination – whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition – must be noted on the record, but the examination still proceeds; the testimonies taken subject to any objection. An objection must be stated concisely and in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to

---

[25] Preliminarily, AGLIC asserts that the motion for sanctions should be stricken as a consequence of Billard's failure to comply with Local Rule 7.d, requiring the preparation and filing of a supporting brief. Billard's motion is entitled a "MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR DISCOVERY SANCTIONS," however, and the "argument" portion of the document provides the Court with appropriate authority. While the "memorandum" should have been attached to the motion as a separate document pursuant to the local rules, the Court declines to strike the motion under these circumstances, when the supporting authority is found in the motion itself.

preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

FED. R. CIV. P. 30(c)(2).

On only a few occasions did Mr. Thrall instruct Yasso not to answer because of a perceived privilege. In most cases, Yasso was instructed not to answer because Mr. Thrall believed the question was argumentative or beyond the scope of the Rule 30(b)(6) notice. Mr. Thrall suggested several times that a magistrate judge be contacted to resolve the issues presented by the objections, but did not follow through on those suggestions. The motion for protective order brought pursuant to Rule 30(d)(3)(A) was not filed until ten days later.[26]

Even if Mr. Thrall believed that the deposition was being conducted in bad faith, or that Mr. Van Susteren's questions were harassing, his remedy was to suspend the deposition and immediately seek relief from the Court, rather than simply instructing a witness not to answer. *Rainbow Popcorn Co., Inc. v. Intergrain Specialty Products, LLC*, 2008 WL 2184116 (D. Neb.) at *12 ("Even if, as defendants claim, the deposition questioning was conducted in bad faith, instructing a witness not to answer is not the appropriate response."); *Smith v. Logansport Comm. School*, 139 F.R.D. 637, 643 (N.D. Ind. 1991) ("If plaintiffs' counsel believed that the deposition was being conducted in bad faith, or that [the witness] was being unreasonably annoyed, embarrassed or harassed, he should have suspended the deposition at that juncture, stated his complaints on the record, and applied immediately to the court for protection under Rule 30(d).").

Rule 30(d)(3)(C) suggests that when a deposition is suspended for the purpose of seeking a court order regarding alleged bad faith or harassment, "Rule 37(a)(5) applies to the award of expenses." Rule 37(a)(5) provides, in turn, that if the court enters an order compelling discovery, the court must require the party whose conduct necessitated the

---

[26] At the instant hearing, Mr. Thrall asserted that the delay in filing the motion for protective order resulted from Mr. Van Susteren failing to promptly provide him with a copy of the video taken at the deposition.

13

motion "to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," unless the opposing party's "objection was substantially justified." FED. R. CIV. P. 37(a)(5)(A)(ii). AGLIC argues that because the proper scope of a Rule 30(b)(6) deposition is a matter of first impression in the Eighth Circuit, and because there is case authority which supports AGLIC's position, its objections to the scope of the questioning were "substantially justified."

If AGLIC had simply objected to the questioning, but allowed Yasso to answer, then AGLIC's argument may have merit. In this case, however, Mr. Thrall improperly instructed Yasso not to answer for reasons unrelated to an asserted privilege, and without immediately seeking Court intervention pursuant to Rule 30(d)(3). As appropriate sanctions, Billard asks (1) that Yasso be compelled to complete her deposition prior to the deposition of Phillip Evans, (2) that Yasso be ordered to answer the questions, except when an appropriate privilege is invoked, (3) that AGLIC be required to pay the costs of Yasso's original deposition, including attorneys' fees and expenses, and (4) that AGLIC be ordered to pay the expenses associated with preparing the motion for sanctions and attending the hearing.

The Court having now resolved the issue which was the basis for the suspension, the Court finds the deposition should continue. As set forth above, Rule 30(c)(2) requires a witness to respond to questions – even if the questions are otherwise objectionable – unless the witness is instructed not to answer in order to preserve a privilege, or the deposition is suspended for the purpose of seeking court intervention pursuant to Rule 30(d)(3). The deposition of Yasso will reconvene and continue for one additional hour, and will be conducted consistent with the FEDERAL RULES OF CIVIL PROCEDURE. Yasso's deposition will be completed prior to the deposition of Phillip Evans.

The Court declines to order AGLIC to pay the costs associated with Yasso's deposition on October 4, 2010. Yasso was made available for the deposition at no cost to Billard. The deposition was conducted in the office of Billard's attorney. (AGLIC's

attorney traveled from Des Moines, Iowa, to Houston, Texas, for the deposition.) While some portion of the deposition was consumed by Mr. Thrall's objections to the scope of a Rule 30(b)(6) deposition (which objections the Court has now determined not to have merit), a substantial portion of the deposition was also consumed by Mr. Van Susteren's irrelevant questioning regarding Yasso's personal life and what she would consider to be "fair."

However, the Court finds that AGLIC should be required to pay the attorneys' fees reasonably incurred by Billard in filing the instant motion for sanctions. Had Mr. Thrall stated his objections at the deposition, but permitted Yasso to answer, then it would have been unnecessary for Billard to file the instant motion. The Court instructs the parties to confer in good faith in an attempt to reach agreement regarding reasonable attorneys' fees incurred by Billard regarding his motion for sanctions. If the parties are unable to agree in this regard, then Billard may file an appropriate application for the Court's review.

### 2. *Suspending the Deposition*

Billard argues alternatively that sanctions should be imposed on AGLIC for "wrongfully suspending the deposition." Rule 30(d)(3) provides that if a party believes a deposition "is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent," then the deposition "must be suspended" for the time necessary for the objecting party to seek a protective order. AGLIC employed that procedure here. During the course of the questioning, Mr. Van Susteren suggested on a couple of occasions that Yasso had been "coached," and suggested that if she falsely testified that she did not know an answer, it was "actionable under perjury." Shortly before the deposition was suspended, Mr. Van Susteren asked Yasso repeatedly for her personal opinion as to what was "fair," and whether if "one of your friends had lost their spouse," would she think the procedure employed by AGLIC was "fair."

A short time later, Yasso was asked whether she could "think of a single claim in 2010 where you got one of these forms like Exhibit 33 in which you found that coverage

attorney traveled from Des Moines, Iowa, to Houston, Texas, for the deposition.) While some portion of the deposition was consumed by Mr. Thrall's objections to the scope of a Rule 30(b)(6) deposition (which objections the Court has now determined not to have merit), a substantial portion of the deposition was also consumed by Mr. Van Susteren's irrelevant questioning regarding Yasso's personal life and what she would consider to be "fair."

However, the Court finds that AGLIC should be required to pay the attorneys' fees reasonably incurred by Billard in filing the instant motion for sanctions. Had Mr. Thrall stated his objections at the deposition, but permitted Yasso to answer, then it would have been unnecessary for Billard to file the instant motion. The Court instructs the parties to confer in good faith in an attempt to reach agreement regarding reasonable attorneys' fees incurred by Billard regarding his motion for sanctions. If the parties are unable to agree in this regard, then Billard may file an appropriate application for the Court's review.

### 2. *Suspending the Deposition*

Billard argues alternatively that sanctions should be imposed on AGLIC for "wrongfully suspending the deposition." Rule 30(d)(3) provides that if a party believes a deposition "is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent," then the deposition "must be suspended" for the time necessary for the objecting party to seek a protective order. AGLIC employed that procedure here. During the course of the questioning, Mr. Van Susteren suggested on a couple of occasions that Yasso had been "coached," and suggested that if she falsely testified that she did not know an answer, it was "actionable under perjury." Shortly before the deposition was suspended, Mr. Van Susteren asked Yasso repeatedly for her personal opinion as to what was "fair," and whether if "one of your friends had lost their spouse," would she think the procedure employed by AGLIC was "fair."

A short time later, Yasso was asked whether she could "think of a single claim in 2010 where you got one of these forms like Exhibit 33 in which you found that coverage

exists and should be paid?"[27] Mr. Thrall objected to the question as being argumentative and beyond the scope of the deposition notice, and instructed Yasso not to answer. Mr. Van Susteren told Mr. Thrall that "I think that's improper," and then expanded his response sarcastically. Mr. Thrall responded by announcing "That's it. We're done for the day." Mr. Thrall announced that he was suspending the deposition and intended to move for a protective order.

Rather than simply walking out, it would have been preferable for Mr. Thrall to ask for Mr. Van Susteren's consent to call a magistrate judge in an attempt to resolve the issues. Mr. Thrall had suggested that course of action on a number of occasions earlier in the deposition, but did not follow through.[28] Nonetheless, after reviewing all of the facts and circumstances, the Court concludes that AGLIC's suspension of the deposition pursuant to Rule 30(d)(3), and subsequent filing of a motion for a protective order, is not sanctionable.

## V. SUMMARY

In summary, the Court concludes that the questioning of a Rule 30(b)(6) deponent is not limited to those subjects identified in the Rule 30(b)(6) notice. Accordingly, Billard will be permitted to question Yasso for one additional hour, with the scope of questioning governed by Rule 26(b). Billard is not required to hire a professional videographer at future depositions, but is required to strictly comply with FEDERAL RULE OF CIVIL

---

[27] *See* Deposition of Nancy Yasso, 282:5-8.

[28] For example, when Mr. Van Susteren initially pursued a line of questioning regarding what Yasso considered to be "fair," Mr. Thrall responded:
> I'm going to object at this point in time. I'm going to ask that we suspend the deposition until can get a judge involved to rule on this line of questioning and on this type of argumentative questioning by counsel.

*See* Deposition of Nancy Yasso, 274:8-12. Mr. Van Susteren continued on a different line of questioning, however, and no effort was made to contact a judge.

PROCEDURE 30(b)(5). AGLIC may choose to designate an additional method for recording, at its own expense, pursuant to Rule 30(b)(3)(B).

AGLIC will be required to pay the reasonable attorneys' fees incurred by Billard regarding the instant motion for sanctions. The parties must confer in good faith in an attempt to reach agreement regarding the appropriate fees. If the parties are unable to agree, then Billard may file an application for review by the Court. Billard's remaining requests for sanctions will be denied.

At all future depositions, and in their other dealings during the pendency of this action, counsel shall strictly adhere to the highest professional conduct.

## *VI. ORDER*

IT IS THEREFORE ORDERED that the Motion for Sanctions (docket number 47) and the Motion for Protective Order (docket number 48) are hereby **GRANTED** in part and **DENIED** in part as follows:

1. The deposition of Nancy Yasso shall continue on a date and at a time mutually agreeable to the parties.

2. The scope of questioning at Yasso's deposition will be governed by FEDERAL RULE OF CIVIL PROCEDURE 26(b).

3. Yasso's deposition shall be completed prior to the deposition of Phillip Evans.

4. Billard is not required to hire a professional videographer, but shall comply with FEDERAL RULE OF CIVIL PROCEDURE 30(b)(5).

5. AGLIC may designate an additional method for recording, at its own expense, pursuant to FEDERAL RULE OF CIVIL PROCEDURE 30(b)(3)(B).

6. AGLIC shall pay Billard for the reasonable attorneys' fees incurred in association with his motion for sanctions. The parties will confer in an attempt to reach agreement regarding the amount of attorneys' fees. If the parties are unable to reach an agreement, then Billard may file an application for the Court's review.

7. All counsel are reminded that at all future depositions, and in their other dealings during the pendency of this action, they must strictly adhere to the highest professional conduct.

DATED this 28th day of October, 2010.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA