IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

AMERICAN GENERAL LIFE
INSURANCE COMPANY,

    Plaintiff/Counterclaim-
    Defendant,

vs.

NORBERT BILLARD,

    Defendant/Counterclaim-
    Plaintiff.

No. C10-1012

ORDER COMPELLING
DISCOVERY RESPONSES

On the 22nd day of December 2010, this matter came on for hearing on the First Amended Motion to Compel Discovery Responses (docket number 83) filed by the Defendant on December 9, 2010. The Plaintiff was represented by its attorneys, Michael W. Thrall and Matthew R. Eslick. Defendant Norbert Billard ("Billard") appeared personally and was represented by his attorney, David J. Van Susteren. In his instant motion, Billard asks that American General Life Insurance Company ("AGLIC") be ordered to supplement its answers to interrogatories and responses to multiple requests for production of documents.

## I. BILLARD'S FIRST SET OF INTERROGATORIES

On August 17, 2010, Billard served AGLIC with 16 interrogatories. On September 20, 2010, AGLIC served Billard with a response, consisting almost entirely of objections.[1] On the following day, September 21, 2010, AGLIC served a second response to Billard's

---

[1] AGLIC's initial response of September 20 was attached to Billard's instant motion, as Exhibit A.

1

first set of interrogatories.[2] While the supplemental response appears to restate the objections previously asserted by AGLIC, it also provides more substantive answers to the interrogatories. Billard argues, however, that the responses are still inadequate.

Billard objects first to AGLIC's response to **Interrogatory No. 4.** There, Billard asks AGLIC to identify "all defenses" which apply to the payment of his claim and to state "all facts" in support of AGLIC's "non-payment of the subject policy benefits." Rather than simply list its defenses, AGLIC refers Billard to its complaint and its answer to Billard's counterclaim. Rather than stating facts which it believes supports the non-payment of Billard's claim, AGLIC "refers Defendant to documents produced in response to Defendant's Requests for Production of Documents." According to its resistance to the instant motion, AGLIC produced 1,678 pages of documents on September 20, 2010, in response to Billard's first set of requests for production of documents, and supplemented its responses by producing an additional 50 pages of documents on October 1, 2010. However, AGLIC did not specify which documents were responsive to Interrogatory No. 4, until Mr. Eslick sent Mr. Van Susteren an e-mail on December 21 (the day prior to the instant hearing).

In response to questioning by the Court, Mr. Eslick represented at the instant hearing that AGLIC's defense is based on Billard and Christie Cavanaugh (the insured) making material misrepresentations in the application for insurance. Count I of AGLIC's complaint – the only count enumerated in the complaint – seeks rescission of the policy based on material misrepresentations

> including, but not limited to the following: that she had a salary or personal earned income of $150,000.00; that she had a net worth of $800,000.00; that Defendant Billard had loaned or invested $250,000.00 or more in a business she owned; that she and Defendant Billard would be married shortly after the

---

[2] AGLIC's supplemental response, served on September 21, was attached to AGLIC's resistance to the instant motion, as Exhibit A.

Application was submitted; and that she had never used cocaine.

*See* Complaint (docket number 2), ¶ 23 at 4. Similarly, in its response to Billard's counterclaim and amended counterclaim, AGLIC asserts that Billard's claim is barred "by one or more fraudulent misrepresentations." *See* docket numbers 27 and 106.

As AGLIC makes clear in its complaint and in its answer to Billard's amended counterclaim, its refusal to pay Billard's claim is based on alleged material misrepresentations made by Billard and Cavanaugh in securing the policy. Among other things, AGLIC claims that Cavanaugh misrepresented her earnings, net worth, business relationship with Billard, personal relationship with Billard, and prior use of an illegal controlled substance. In his initial remarks at the instant hearing, Mr. Thrall made similar allegations.[3] However, the answer to AGLIC's interrogatories states that the material misrepresentations include, "*but [are] not limited to*," the listed items. *If* AGLIC is relying on misrepresentations *other* than those listed in its complaint, then it must supplement its answer to Interrogatory No. 4 and identify any additional alleged material misrepresentations.

Regarding Billard's request that AGLIC state "all facts" which support its non-payment of Billard's claim, AGLIC "exercises its right to produce business records pursuant to Federal Rule of Civil Procedure 33(d)(1)."[4] Contemporaneously, AGLIC

---

[3] Mr. Van Susteren argued that he was being "whipsawed here today because what Mr. Thrall said was there's all these different defenses, but when you ask Mr. Eslick what the defense was, it was material misrepresentation in the application." The Court believes, however, that the statements made by Mr. Thrall and Mr. Eslick at the hearing are consistent with each other, and consistent with the allegations contained in AGLIC's complaint and answer to the amended counterclaim.

[4] FED. R. CIV. P. 33(d) states:
    **Option to Produce Business Records.** If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business

(continued...)

provided Billard with approximately 1,700 pages of documents. No effort was made to specify which documents were responsive to Interrogatory No. 4, however, until the day prior to the hearing.[5]

Rule 33(d) permits a party to respond to interrogatories by specifying business records, if (1) the answer to the interrogatory may be determined by examining the records and (2) the burden of ascertaining the answer will be substantially the same for either party. If both prongs of the test have been met, then the responding party may answer by (1) specifying the records in sufficient detail to make the search as easy for the interrogating party as it would have been for the responding party, and (2) providing the interrogating party an opportunity to examine and copy the records.

---

[4](...continued)
> records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
>> (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
>> (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

[5] At the time of hearing, Mr. Eslick represented to the Court that the parties "held a meet and confer conference" on December 8 regarding the detail required by Rule 33(d)(1). According to Mr. Eslick, Mr. Van Susteren had asked for it previously, "but said that he would try on his own to determine which documents were responsive." When Mr. Van Susteren asked for it again on December 8, Mr. Eslick "represented that I would look at our document production and provide Bates ranges." The instant motion to compel was filed on the following day, December 9. The Bates ranges were e-mailed by Mr. Eslick to Mr. Van Susteren on December 21 – the day prior to the hearing. Mr. Van Susteren advised the Court that he was in transit and had not had an opportunity to review the substance of Mr. Eslick's e-mail.

4

Here, Billard asks that AGLIC identify "all facts" supporting its denial of Billard's claim. The Court concludes that AGLIC should be required to supplement its response to Interrogatory No. 4, identifying in summary fashion those facts which support its decision to refuse payment of Billard's claim. While it is unreasonable to expect AGLIC to identify every fact or detail which may support its complaint or a defense to the counterclaim, merely referring Billard to voluminous documents does not fairly disclose the essential nature of AGLIC's claims. Accordingly, while AGLIC is not required to state "all facts" which support its position in this case, it must fairly summarize those facts which it contends support its refusal to pay Billard's claim.

In **Interrogatory No. 5**, Billard asks AGLIC to describe the "procedure or method" used to underwrite "the type of policy issued to Christie Cavanaugh." After stating general objections, AGLIC advises Billard that its decision whether to underwrite a policy "is guided by the judgment of one or more underwriters, as informed by the guidelines described in the Answer to Interrogatory Number 7." Billard objects to AGLIC's response, asserting that it "fails to describe the actual procedures" used by AGLIC to decide whether to underwrite the policy. Mr. Thrall noted that AGLIC has produced the underwriting file, including the "underwriting log," which "sets forth what steps they went through and what questions they asked and that whole process."

In responding that its decision whether to underwrite is "guided by the judgment of one or more underwriters," AGLIC did not fairly describe the "procedure or method" used by it to reach underwriting decisions. The Court is unable to determine whether the procedure is adequately described in the underwriting log, since that document was not produced at the time of hearing. In addition, it is unclear on this record whether the e-mail sent by Mr. Eslick on December 21 identifies the underwriting log as responsive to Interrogatory No. 5. Accordingly, the Court concludes that AGLIC is required to supplement its response to Interrogatory No. 5 by fairly describing the procedure or method used by it to reach an underwriting decision for this type of policy.

Similarly, in **Interrogatory No. 6**, Billard asks AGLIC to describe the procedure or method used to determine whether coverage exists "for a particular claim under the type of policy issued to Christie Cavanaugh." In response, AGLIC informs Billard that his claim for benefits "was assigned to Phillip Evans for a coverage determination and then the claim was considered by the Claim Committee." Billard argues that this bare bones description of the procedure employed by AGLIC is "just wholly insufficient." The Court agrees. While the answer need not be voluminous, AGLIC is required to fairly describe the procedure which it routinely follows in considering whether coverage exists for a particular claim under this type of policy. The response must be supplemented accordingly.

In resisting the instant motion to compel, AGLIC also argues that while an interrogatory regarding how Billard's claim was decided may be relevant, an interrogatory asking AGLIC to describe the procedure or method used to determine the validity of a claim "under the type of policy issued to Christie Cavanaugh" is overly broad. The FEDERAL RULES OF CIVIL PROCEDURE authorize broad discovery. *See* FED. R. CIV. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."). In a discovery context, relevancy "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). As the party resisting production of the requested information, AGLIC bears the burden of establishing lack of relevancy. *St. Paul Reinsurance Co., Ltd. v. Commercial Financial Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000).

In applying the liberal discovery standard found in the federal rules and cases, the Court concludes that Billard is entitled to discover the "procedure or method" used by AGLIC to make underwriting decisions, or to determine the validity of a claim, under the "type of policy" issued in this case. Such information may be relevant in discovering how

6

AGLIC determines whether a false representation is material for underwriting purposes. Whether Billard will be permitted to introduce evidence at the trial of AGLIC's procedures or methods, will be determined by the trial judge.

AGLIC also objects that Interrogatories Nos. 5 and 6 are not "limited temporally in any fashion." In supplementing its response to Interrogatory No. 5 – describing the procedure or method used to reach an underwriting decision – AGLIC should describe the steps employed at the time the policy in this case was issued. In responding to Interrogatory No. 6 – describing the procedure or method used to determine the validity of a claim – AGLIC should describe the steps employed at the time the claim in this case was submitted.

In **Interrogatory No. 7**, Billard asks AGLIC to identify "all written policies, manuals, or other written communications" used to underwrite a life insurance policy of the type issued in this case. After stating general objections, AGLIC identifies the Swiss Re Underwriters Manual and AGLIC's "internal underwriting guidelines." While AGLIC's response does not identify its "internal underwriting guidelines" with specificity, Mr. Eslick represented at the instant hearing that AGLIC stands "ready, willing, and able to produce this information" after a protective order has been entered. Assuming that the documents have now been produced, or will be shortly, the Court concludes that AGLIC has sufficiently "identified" the items described in Interrogatory No. 7.[6]

Similarly, in **Interrogatory No. 8**, Billard asks AGLIC to identify "all written policies, manuals, or other written communications" regarding the handling of life insurance claims. After stating general objections, AGLIC advises Billard that "there are no written policies, manuals, or communications that contain company practices, procedures, or policies regarding the 'handing' of Defendant's claim." Basically, Billard simply disbelieves AGLIC's answer. According to Billard, AGLIC "undoubtedly has

---

[6] A protective Order was filed in this case on December 23, 2010, one day following the hearing. *See* docket number 117.

policies in place for handling benefits claims." At the time of hearing, Mr. Van Susteren referred to a "claims manual" that guided Phillip Evans in the handling of this claim. Mr. Thrall responded that AGLIC has no written policy manuals regarding the handling of claims, but the reference in the deposition may have been to a portion of the Swiss Re Underwriting Manual, which contains rules for the handling of claims. The Court assumes that AGLIC has answered the interrogatory truthfully.

At the time of hearing, Billard withdrew his objection to AGLIC's response to **Interrogatory No. 9**.

Next, Billard complains that AGLIC failed to provide the home addresses of its employees, as requested in **Interrogatory No. 12**. AGLIC objects to providing home addresses for persons who are employed by AGLIC. AGLIC asserts that the witnesses' business address (*i.e.*, at AGLIC) is sufficient. Mr. Eslick noted at the hearing that when it was discovered that two persons were no longer employed at AGLIC, the answer to interrogatory was supplemented to provide their home telephone numbers and addresses. The Court concludes that it is not necessary for AGLIC to provide the home addresses for persons currently employed by it.

Finally, at the time of hearing, Billard withdrew his objection to AGLIC's response to **Interrogatory No. 15**.

## II. BILLARD'S FIRST SET OF REQUESTS FOR PRODUCTION

Contemporaneously with the serving of his first set of interrogatories, Billard served AGLIC with his first set of requests for production. AGLIC responded to the requests on September 20, 2010.[7] According to its resistance to the instant motion, AGLIC initially produced 1,678 pages of documents, with an additional 50 pages of documents produced on October 1, 2010. Billard objects, however, to AGLIC's response to Request No. 18.

---

[7] AGLIC's responses and objections were attached to Billard's instant motion, as Exhibit B.

**Request No. 18** of Billard's first set of requests for production of documents asks for copies of "the complete claim file" generated prior to the filing of the lawsuit. After stating general objections, AGLIC "also objects to Request No. 18 as it is duplicative of Request Number 1." **Request No. 1** asks for "[t]he complete claim files for all claims made by the Defendant." After stating general objections, AGLIC responded to Request No. 1 by stating that it "has produced responsive documents."

Billard asserts that AGLIC's responses do not include an unequivocal statement that *all* responsive documents have been produced. In response, Mr. Eslick refers to the "general objections" preamble found in AGLIC's supplemental responses to the first set of requests for production, which states in paragraph 11:

> AGLIC's responses are based upon the information AGLIC presently has in its custody and control and of which it is presently aware after a reasonably diligent search for responsive material and information.

*See* AGLIC's Supplemental Responses and Objections to Defendant's First Set of Requests for Production (docket number 104-1), ¶ 11 at 3.

To avoid any confusion or misunderstanding, the Court concludes that in those instances where AGLIC believes that it has produced all documents which are responsive to Billard's request, it should specifically make that representation. AGLIC's response to Request No. 18 should be supplemented accordingly.

### III. BILLARD'S SECOND SET OF REQUESTS FOR PRODUCTION

On September 29, 2010, Billard served AGLIC with a second set of requests for production, identifying an additional 20 requests. AGLIC served its responses and objections on November 1, 2010.[8] In his motion, Billard objects to AGLIC's responses to Requests Nos. 2, 3, 4, 6, 7, 8, 10, 11, 14, 15, 16, 17, 18, 19, and 20.

---

[8] AGLIC's responses and objections to the second set of requests for production were attached to Billard's instant motion, as Exhibit C.

In **Request No. 2** of his second set of requests for production of documents, Billard seeks copies of various documents pertaining to work done by Alan Curry, Daniel McIntosh, and ICS Merrill. After asserting general objections, AGLIC directs Billard "to documents produced in response to Defendant's First Requests for Production." According to Mr. Eslick, he advised Mr. Van Susteren at a conference on December 8, 2010, that the response would be supplemented to provide the "Bates ranges" which are responsive to Request No. 2. Those Bates ranges were finally provided to Mr. Van Susteren on December 21, the day prior to the hearing. As stated above, Mr. Van Susteren was on the road on the day prior to the hearing and, therefore, was unable to review the additional information provided by AGLIC.

The Court concludes that AGLIC is required to supplement its response to Request No. 2, by referring specifically to the Bates numbers of the documents which it believes are responsive to Billard's request. AGLIC must also confirm that it has produced all documents which are responsive to that Request.

**Request No. 3** raises substantially the same issues. Billard seeks documents pertaining to the "contractual relationship" between ITECH and AGLIC, Billard, and/or Cavanaugh. AGLIC must supplement its response by referring specifically to the Bates numbers of the documents which it has produced, and which it believes are responsive to Request No. 3. AGLIC must then state that it has produced all documents which are responsive to Billard's Request.

The Court reaches the same conclusion with respect to **Request No. 4, Request No. 6, Request No. 7,** and **Request No. 8**. AGLIC shall supplement its response to the second request for production of documents as described above.

In **Request No. 10, Request Number 11, Request No. 14, Request No. 15,** and **Request No. 20**, Billard seeks production of documents relating to the preservation of evidence. Specifically, Billard asks that AGLIC provide documents related to its obligation to place a "litigation hold" on relevant documents, as described in *Zubulake v.*

*UBS Warburg LLC*, 229 F.R.D. 422, 431 (S.D.N.Y. 2004). Initially, AGLIC objected on the grounds of relevance and privilege. In its resistance to the instant motion, however, AGLIC states that it recently "became aware that an employee may have deleted an e-mail." Accordingly, AGLIC promises to supplement its response "to the extent non-privileged and discoverable documents are in existence." At the time of hearing, Mr. Eslick advised the Court that he "received a stack of those document retention protocols in my e-mail yesterday, but I have not reviewed them yet." AGLIC's counsel also represented that AGLIC's "AWD system" is a comprehensive method for preserving electronically stored information and, therefore, a "litigation hold letter" may not have been necessary.

The Court concludes that AGLIC is required to produce copies of the document preservation protocols or policies described by its counsel at the time of hearing. In addition, AGLIC is required to produce copies of any "preservation letters" or "litigation holds" which were prepared in connection with this case. If such documents were not issued in this case, then AGLIC must specifically say so.

**Request No. 16** asks for a "complete bit by bit mirror image" of all hard drives or other storage devices on computers used by Phillip Evans, Jr. **Request No. 17** is identical, except it refers to Nancy Yasso. In addition to objections based on privilege and relevancy, AGLIC objects based on the expense of obtaining the requested information and the likelihood that it contains "commercially sensitive information." Billard cites no authority in support of his motion to compel production of the requested items. Absent any showing that production of the requested items will likely produce documents not already disclosed, the Court finds that the motion to compel should be denied.

**Request No. 18** asks that AGLIC produce copies of all voice mail messages relating to the issuance of the policy or consideration of Billard's claim. **Request No. 19** asks for all "electronic text, instant messaging, or other electronic messages" relating to the policy or the claim. In its responses, AGLIC asserts that obtaining such information "would

require the production of information that is not reasonably accessible because of undue burden or cost, and that the burden or expense of harvesting and producing data in native form outweighs the likely benefit of such information within the context of this litigation." In its resistance to the instant motion, AGLIC also advises the Court that it "has confirmed, after a reasonably diligent inquiry, that it presently [is] aware of no non-privileged recordings of voice mails that were sent by or received by its underwriters or claims personnel that also relate or pertain to the application for the policy of insurance involved in this litigation, or the denial of this claim." In addition, AGLIC promises to "supplement such disclosures if responsive information is discovered." Regarding Billard's request for "electronic text, instant messaging, or other electronic messages," AGLIC directs Billard's attention to the documents produced in response to his first request for production.

Under the record presented here, the Court finds that no further response is presently required by AGLIC. *If* AGLIC discovers voice mail messages, or other electronic messages not previously produced, then it must supplement its responses accordingly.

### *IV. BILLARD'S THIRD SET OF REQUESTS FOR PRODUCTION*

On October 6, 2010, Billard served AGLIC with 13 additional requests for production, as set forth in his third set of requests for production. AGLIC served its responses and objections on November 8, 2010.[9] In his instant motion, Billard objects to all of AGLIC's responses.

In this set of requests for production, Billard seeks information on claims other than his own. Following Cavanaugh's death and the submission of Billard's claim for benefits, AGLIC conducted an investigation and discovered various alleged "material misrepresentations" made in the application for insurance. AGLIC then referred the claim

---

[9] AGLIC's responses and objections to the third set of requests for production were attached to Billard's instant motion, as Exhibit D.

to Nancy Yasso for a determination of whether AGLIC would have underwritten the policy if the true facts had been known when the application was considered. Ms. Yasso opined that if "correct and complete information" had been provided, then the policy "would not have issued." AGLIC's claims review committee then recommended that the policy be rescinded "based on financial primarily." Billard argues that "this contestable claim process is virtually a corporate-endorsed sham," and seeks to discover evidence which would support his belief that Ms. Yasso *always* concludes that a policy would not have issued. Noting that Billard has dismissed his bad faith claim, AGLIC asserts that the information sought by Billard has "nothing to do with whether this claim was properly denied."

In its complaint, AGLIC seeks rescission of the life insurance policy, based on alleged material misrepresentations made in the application. In his counterclaim, Billard asks that judgment enter against AGLIC for the face amount of the policy, based on theories of contract, promissory estoppel, and misrepresentation. In resolving this discovery dispute, the Court must determine whether the information sought by Billard is relevant to either party's claim or defense. FED. R. CIV. P. 26(b)(1). In a discovery context, relevancy is broadly construed. *Oppenheimer Fund*, 437 U.S. at 351.

As part of the review process, AGLIC provides Ms. Yasso with a "Contestable Claim Referral Form," providing certain basic information regarding the claim in Section 1. Ms. Yasso then completes Section 2, finding, among other things, "what action would have been recommended to the Medical Department had the correct and complete information been known."[10] In **Request No. 1**, Billard seeks all contestable claim referral forms in which Nancy Yasso participated in the last two years. **Request No. 2** seeks the "drafts" of any such referral forms. **Request No. 3** asks for "all documents that relate or pertain" to such referral forms.

---

[10] The Contestable Claim Referral Form for this policy has been produced, and is identified with Bates numbers AGLIC 01181-01183.

13

To be entitled to rescission of the policy on the ground that Cavanaugh's application contained misrepresentations, AGLIC must prove the following: (1) a representation, (2) falsity, (3) materiality, (4) intent to induce the plaintiff to act or refrain from acting, and (5) reliance. *Utica Mut. Ins. Co. v. Stockdale Agency*, 892 F. Supp. 1179, 1200 (N.D. Iowa 1995). Here, it would appear that the fighting issues at trial will be whether certain representations made in the application were false, and, if so, whether the false representations were material.

The Court believes that Billard is entitled to discover information which may be relevant to the issue of what representations AGLIC believes are material in reaching an underwriting decision. For example, AGLIC's claim that Cavanaugh's representations regarding her income constituted a "material misrepresentation," may be undercut if there is evidence that AGLIC did not routinely rely on income information when making underwriting decisions. However, the documents sought by Billard in Requests Nos. 1, 2, and 3, are not likely to provide that information. Instead, Billard seeks information regarding other claims simply to show that Ms. Yasso always concludes that the policy would not have been underwritten if "correct and complete information" had been known. That fact, even if true, is not relevant to any party's claim or defense. That is, whether Ms. Yasso routinely recommends that claims be denied is not relevant to the issue of whether the alleged false representations made by Cavanaugh in this case were "material."[11] Accordingly, the Court finds that Billard's request to compel responses to Requests Nos. 1, 2, and 3 should be denied. For the same reason, the Court concludes that the motion to compel should be denied regarding **Requests Nos. 4, 5, 6, 7, 8, 9, 10, 11, and 12**.

---

[11] While conceding that Billard is no longer asserting a claim of bad faith, Mr. Van Susteren argued at the instant hearing that AGLIC's claim for rescission requires it to "do equity," thus making the *process* for considering the claim an issue at trial. Billard cites no authority for this proposition, and the Court finds it unpersuasive.

**Request No. 13** of Billard's third set of requests for production asks for all email communications "not already produced in this litigation and which relate to any issue in this litigation," for certain identified persons. At the time of hearing, Mr. Eslick represented that all non-privileged documents described in Request No. 13 have been previously produced, with the Bates numbers provided on the day prior to the hearing. The Court concludes that AGLIC is required to supplement its response to Request No. 13, by referring specifically to the Bates numbers of the documents which it believes are responsive to Billard's request. AGLIC must also confirm that it has produced all non-privileged documents which are responsive to the request. If privilege is asserted, then AGLIC must provide an appropriate privilege log.

## V. ORDER

IT IS THEREFORE ORDERED that the First Amended Motion to Compel Discovery Responses (docket number 83) filed by Billard on December 9, 2010 is **GRANTED** in part and **DENIED** in part, as set forth above.

DATED this 29th day of December, 2010.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA