IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY,<br><br>    Plaintiff/Counterclaim-Defendant,<br><br>vs.<br><br>NORBERT BILLARD,<br><br>    Defendant/Counterclaim-Plaintiff. | No. C10-1012<br><br>ORDER REGARDING CHOICE OF LAW |

## TABLE OF CONTENTS

I.  INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. RELEVANT FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV. DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    A.    *Iowa Law Applies to the Choice of Law Issue*. . . . . . . . . . 5
    B.    *Which State's Substantive Law is Applicable?*. . . . . . . . . 5
        1.    *Statement of the Law*. . . . . . . . . . . . . . . . . . . . . 5
        2.    *Analysis*. . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

V.  ORDER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## I. INTRODUCTION

This matter comes before the Court on the Motion for Choice of Law Ruling (docket number 142) filed by Defendant Norbert Billard on January 24, 2011; the Resistance (docket number 172) filed by Plaintiff American General Life Insurance

Company on February 10, 2011; and the Reply (docket number 176) filed by Billard on February 15, 2011. Pursuant to Local Rule 7.c, the issue will be decided without oral argument.

## II. PROCEDURAL HISTORY

On May 6, 2010, American General Life Insurance Company ("AGLIC") filed a complaint seeking rescission of a life insurance policy issued by AGLIC on the life of Christie Cavanaugh. AGLIC asks that the policy be rescinded based on material misrepresentations made by Defendant Norbert Billard ("Billard") and Cavanaugh in the policy application. On June 15, 2010, Billard filed an answer, denying the material allegations, and asking that the complaint be dismissed.

On July 6, 2010, Billard amended his answer to include certain affirmative defenses, and added a counterclaim seeking judgment against AGLIC for the face amount of the policy. The counterclaim was amended on November 29, 2010 and seeks judgment against AGLIC for breach of contract, promissory estoppel, and "misrepresentation of insurance policy."

The issue now before the Court is which state's substantive law will be used in resolving this matter.

## III. RELEVANT FACTS

The facts relating to the choice of law issue are generally undisputed and may be briefly stated as follows:[1]

1. AGLIC is an insurance company organized under the laws of the State of Texas, with its corporate headquarters in Houston, Texas.

---

[1] AGLIC urges the Court to deny the instant motion as a consequence of Billard's failure to comply with Local Rule 7.d. That is, AGLIC argues that it and the Court "are entitled to know the facts" supporting the motion. Some of AGLIC's concerns are addressed in Billard's reply. The Court concludes that the established facts are adequate to address the issue of which state's substantive law applies to the parties' claims.

2. On July 14, 2008, Christie M. Cavanaugh signed a two-part "Term Insurance Application." According to the application, Cavanaugh was living in Palm Beach, Florida, and the application was signed by her in Palm Beach.

3. The application was also signed by Billard. According to the application, Billard was living in Iowa.[2]

4. Cavanaugh was identified on the application as the "proposed insured," but Billard was identified as the "owner" and primary beneficiary.

5. The application was then sent to ITECH Corporation in Point Richmond, California, which apparently performs underwriting services for AGLIC.

6. The individuals responsible for underwriting the policy were Latoya Wright, who resides in Columbus, Ohio, and Tamaria Schmeling, who resides in Lincoln, Nebraska.

7. AGLIC issued a policy on the life of Christie M. Cavanaugh, which had an effective date of October 23, 2008 and a death benefit of $1 million. According to the policy, it was signed by AGLIC's president and secretary at "Our Home Office" in Houston, Texas.

8. The policy was delivered to Billard in Iowa on October 20, 2008. On that date, Billard wrote a check to AGLIC for the first year's premium, using his Iowa bank account.

---

[2] Cavanaugh and Billard actually signed *two* applications. In the "Florida Version," attached to AGLIC's resistance as Exhibit A, Billard's address is shown as 817 West Jasper St., Edgar, Iowa 52057. In a separate application signed by Cavanaugh and Billard on the same date, attached to Billard's reply as Exhibit V, Billard's address is shown as 817 West Jasper St., Edgewood, Iowa 52057. The check used by Billard to pay the insurance premium showed his address as 817 W. Jasper St. Apt. 5D, Manchester, IA 52057. While these discrepancies are interesting, they would not appear to have any significance to the choice of law issue. That is, it is apparently undisputed that Billard lived in Iowa when the application was submitted and the policy was issued.

9. Cavanaugh and Billard apparently traveled to Cabo San Lucas, Mexico, in December 2008. In his brief, Billard asserts that they "moved to Cabo San Lucas, Mexico to live." AGLIC contests that assertion, noting that in the "Foreign Death Questionnaire" completed by Billard following Cavanaugh's death, Billard stated that they traveled to "Cabo" on June 4, 2009, on a "round trip," for purposes of a "vacation." A friend of Cavanaugh's, Barbara Perlman, provided a statement that Cavanaugh and Billard "spent a lot of time in Mexico," and that Perlman had seen Cavanaugh in June "when she was back from Mexico." In an e-mail dated July 23, 2009, Cavanaugh stated that she was "enjoying Cabo," while "Uncle Norbert" was "still in the States." Cavanaugh states in the e-mail that "we will be here for at least 2 more months."

10. On August 2, 2010, Cavanaugh died in Cabo San Lucas, Mexico, of "asphyxia due to bronchoaspiration." According to Billard's brief, Cavanaugh died "as a result of drinking alcohol to such an extent that she vomited while unconscious and asphyxiated on the regurgitated vomit in her sleep."

11. The insurance policy at issue in this case does not contain a choice of law clause.

## IV. DISCUSSION

In its complaint, AGLIC asks that the Court rescind the insurance policy in this case, claiming that Cavanaugh and Billard made material false representations on the application. In his counterclaim, Billard asks that the Court declare the policy valid, and that judgment enter against AGLIC based on breach of contract, promissory estoppel, and "misrepresentation of insurance policy." All of these claims turn on whether the policy may be voided by alleged material misrepresentations made in the application. The parties disagree regarding which state's substantive law is applicable to this issue.[3]

---

[3] In his brief, Billard asserts that while Florida, Texas, and Iowa all require a material misrepresentation be proved to void an insurance policy, the "tests for materiality" differ in each state. *See* Billard's Brief (docket number 142-1) at 6. AGLIC (continued...)

### A. *Iowa Law Applies to the Choice of Law Issue*

Preliminarily, the Court notes that in determining which state's substantive law will apply in this case, the parties agree that Iowa law applies to the choice of law issue. "Federal courts sitting in diversity are required to look to the choice-of-law principles of the forum state and then apply the same law to the case as the forum state would." *PVI, Inc. v. Ratiopharm GmbH*, 253 F.3d 320, 329 (8th Cir. 2001) (citing *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496-98 (1941)).

### B. *Which State's Substantive Law is Applicable?*

#### 1. *Statement of the Law*

Iowa has adopted the Restatement (Second) of Conflict of Laws in resolving choice-of-law issues. *Cole v. State Auto. & Cas. Underwriters*, 296 N.W.2d 779, 781 (Iowa 1980) ("We think it is clear that choice-of-law questions are now to be determined under the Restatement (Second) test: intent of the parties or the most significant relationship."). *See also Gabe's Const. Co., Inc. v. United Capital Ins. Co.*, 539 N.W.2d 144, 146 (Iowa 1995) ("In the absence of a choice-of-law clause in the policy, the rights of the parties are determined by the law of the state which 'has the most significant relationship to the transaction and the parties.'"). Regarding life insurance contracts, the Restatement (Second) states:

> The validity of a life insurance contract issued to the insured upon his application and the rights created thereby are determined, in the absence of an effective choice of law by the insured in his application, by the local law of the state where the insured was domiciled at the time the policy was applied for, unless, with respect to the particular issue, some other state has a more significant relationship under the principles

---

[3](...continued)
does not dispute this point and, therefore, the Court assumes that there are material differences in the states' substantive law regarding what constitutes a material misrepresentation. For purposes of this motion, however, the Court need not determine those substantive differences.

stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws, § 192 (1971). *See also Lindstrom v. Aetna Life Ins. Co.*, 203 N.W.2d 623, 628 (Iowa 1973) (recognizing the "general rule" found in section 192).

Thus, in determining the "validity" of the life insurance contract, the Court must first determine whether "an effective choice of law" was included in the application. Here, neither the application, nor the insurance policy, contained any language establishing a "choice of law." Where no "choice of law" is identified, then the law of the state where the insured was domiciled will be applied. That presumption may be overcome, however, if some other state has a more significant relationship to the transaction. It is undisputed that Cavanaugh was "domiciled" in Florida when the policy was applied for and issued.[4] Accordingly, pursuant to section 192, Florida substantive law will apply *unless* "some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties."

Section 6 of the Restatement (Second) identifies the following relevant factors to the choice of law:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws, § 6 (1971).

---

[4] "In the absence of strong countervailing considerations, the insured will be *held* to be domiciled in the state of which he describes himself as a resident in his application to the insurance company." Restatement (Second) of Conflict of Laws, § 192 cmt. b.

The factors to be taken into account in applying the principles of section 6, include:

    (a) the place of contracting,
    (b) the place of negotiation of the contract,
    (c) the place of performance,
    (d) the location of the subject matter of the contract, and
    (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

Restatement (Second) of Conflict of Laws, § 188 (1971).[5] "These contacts are to be evaluated according to their relative importance with respect to the particular issue." *Id.*

While the "more significant relationship" test is easily stated, its application is sometimes more problematic. Here, Billard argues that "Texas has a much more significant relationship to the issues in this case than any other state." Billard notes that AGLIC is a Texas company, which is headquartered in Houston and is regulated by Texas authorities. Billard asserts that "the policy of insurance was contracted for and issued from AGLIC's Texas headquarters." On the other hand, AGLIC argues that if the presumption found in section 192 is rebutted, then Florida nonetheless has a more significant relationship to the dispute. AGLIC asserts that "since the application for insurance was executed in Florida and the Policy insured the life of a Florida citizen, Florida posses [*sic*] a greater interest than any other state in insuring its regulatory directives are fulfilled."

The official comments to section 192 identify several reasons "why such importance is attributed to the state where the insured was domiciled at the time the policy was applied for."[6] According to the Restatement (Second), "a major purpose of life insurance legislation is to protect the individual insured" and the courts have "sought to assist in the

---

[5] The factors described in section 188, to be applied to the choice-of-law principles stated in section 6, together with the corresponding comments, are also applicable to life insurance contracts. Restatement (Second) of Conflict of Laws, § 192 cmt. c.

[6] Restatement (Second) of Conflict of Laws § 192 cmt. c.

7

achievement of this purpose" by requiring that "at least as a general rule, the insured should receive the protection accorded him by the local law of his domicile."[7]

The official comments to section 192 recognize, however, that "[t]here will also be occasions where, following application for the policy, the insured changes his domicil to another state. In such a situation, the state of the insured's new domicil will have the dominant interest in him, and it may be that its local law should be applied to determine at least some issues arising under the policy."[8]

2.  *Analysis*

Since neither the application nor the life insurance policy in this case had a choice-of-law provision, there is a presumption under section 192 of the Restatement (Second) that the validity of the life insurance contract will be determined by the law of the state "where the insured was domiciled at the time the policy was applied for" – in this case, Florida. The presumption may be overcome, however, if "some other state has a more significant relationship" to the transaction and the parties. Accordingly, the Court must consider: Does Texas have a more significant relationship than Florida with this transaction and the parties? Does Iowa have a more significant relationship than Florida with this transaction and the parties? The Court concludes that both questions should be answered in the negative.

The principal dispute in this case is whether Cavanaugh made material misrepresentations in her application for insurance. Cavanaugh was living in Florida when the application was made and the application was filled out in Florida. In fact, Cavanaugh completed a "Florida Version" of the application, on a form provided by AGLIC. The material misrepresentations, if any, were committed by Cavanaugh in Florida.

---

[7] *Id.*

[8] Restatement (Second) of Conflict of Laws § 192 cmt. d.

By contrast, Texas and Iowa have only a limited relationship to the dispute. While AGLIC is headquartered in Texas, it referred the application to one or more companies in California for underwriting services. The persons responsible for authorizing the issuance of the policy live in Ohio and Nebraska. While the policy was issued in Texas, it was sent to the owner and beneficiary in Iowa. Iowa's only connection with the dispute is the fact that Billard apparently maintains his principal residence here. Since neither Texas nor Iowa has "a more significant relationship" with the transaction, the presumption found in section 192 of the Restatement (Second) requires that Florida substantive law apply.

In *Sheehan v. Northwestern Mut. Life Ins. Co.*, 44 S.W.3d 389 (Mo. Ct. App. 2000), cited by Billard in his brief, the Court reached a similar conclusion. There, the decedent completed the application for insurance in Missouri, the application form was intended by the insurance company to be used to apply for a Missouri policy, the policy was issued on a form intended to be a Missouri policy, the policy was sent to the decedent's agent in Missouri, the decedent accepted the policy in Missouri, and the company sent the notice of recision to the beneficiary and her attorney in Missouri. However, the record showed that at the time the policy was applied for the decedent was domiciled in Michigan. Citing the Restatement (Second) of Conflict of Laws, the Missouri Court of Appeals concluded that the trial court correctly applied Michigan law.

A federal district court in Missouri reached a similar conclusion in *Buck v. American States Life Ins. Co.*, 723 F. Supp. 155 (E.D. Mo. 1989), also cited by Billard in his brief. The issue in *Buck* was whether misrepresentations made in the application for insurance voided the policy. Because the insured was domiciled in Illinois when the application was made, and because Missouri did not "have a 'more significant relationship' to this transaction than Illinois, with respect to the issue of the effect of misrepresentations made by Illinois citizens when acquiring life insurance," the Court concluded that Illinois substantive law applied. *Id.* at 160. "The law of the insured's domicile generally controls

issues arising under a life insurance policy because a state generally has a strong interest in protecting its own citizens." *Id.*

The Court also finds *Duchardt v. Midland National Life Ins. Co.*, 265 F.R.D. 436 (S.D. Iowa 2009), to be instructive. There, the Court was required to consider choice-of-law principles under section 192 of the Restatement (Second) in determining a class certification. The plaintiffs argued that because the insurance company's principal place of business was in Iowa and the contract referenced an Iowa address, the Court should conclude that the "most significant relationship" was with Iowa. *Id.* at 448. Chief Judge Pratt rejected the plaintiffs' argument:

> Here, the only apparent tie to Iowa in the present litigation is Midland's business headquarters in Iowa. Accordingly, the Court believes that the presumption in section 192 of the Restatement, as well as the other factors set forth in section 188, requires that each policyholder's breach of contract claim be considered under the laws of that policyholder's domiciliary state.

*Duchardt*, 265 F.R.D. at 448.[9]

The Court's conclusion here is also supported by the decision in *Martin v. John Hancock Mut. Life Ins. Co.*, 56 F. Supp. 2d 670 (S.D.W.Va. 1999). There, the insured applied for and received a life insurance policy in the territory of Guam. After the insurance company refused to make payment, the beneficiary brought an action for enforcement of the policy. The plaintiff asked that West Virginia law apply to the dispute, noting that she was residing in West Virginia at the time of her mother's death. The insurance company asserted that Guam territorial law should govern or, alternatively, that

---

[9] Chief Judge Pratt also distinguished his prior ruling in *Grove v. Principal Mut. Life Ins. Co.*, 14 F. Supp. 2d 1101 (S.D. Iowa 1998). There, the plaintiffs brought an action against a life insurer to recover for fraud, negligence, and breach of fiduciary duty. Noting that "Iowa is the state from which the alleged nationwide fraudulent scheme was orchestrated," and citing section 188 of the Restatement (Second), Judge Pratt concluded that "Iowa has more significant contacts with all claims in this litigation." *Id.* at 1106. Section 192 of the Restatement (Second) was not referenced by Judge Pratt in *Grove*.

Massachusetts law should apply to coincide "with the parties' reasonable expectations." The Court noted that section 192 of the Restatement (Second) "focuses primarily on the actions of the insured, not the beneficiary." *Id.* at 673. Furthermore, section 192 "focuses on the domicile at the time of application for the policy." *Id.* Because neither party "demonstrated another state maintains a more significant relationship to the parties or the transaction," the Court concluded that Guam territorial law was applicable. *Id.* at 673-74.

In summary, because Cavanaugh was domiciled in Florida when she completed and submitted her application for the life insurance policy in dispute here, section 192 of the Restatement (Second) requires that Florida substantive law apply, unless some other state has a more significant relationship with the transaction and the parties. For the reasons set forth above, the Court concludes that neither Texas nor Iowa has a more significant relationship to the issue of whether Cavanaugh made material misrepresentations on her application for insurance. Accordingly, the Court finds that Florida substantive law will apply.[10]

---

[10] In his reply brief, Billard asserts – for the first time – that "Florida law cannot be applied in the instant case." The Court generally will not consider arguments raised by a movant for the first time in his reply. *See Barham v. Reliance Standard Life Ins. Co.*, 441 F.3d 581, 584 (8th Cir. 2006) ("As a general rule, we will not consider arguments raised for the first time in a reply brief."). In any event, however, Billard's argument goes to the issue of what *is* Florida law as applied to these facts, not whether Florida's substantive law applies.

Billard also asserts for the first time in his reply brief that section 192 of the Restatement (Second) is inapplicable because the policy was "issued upon the life of someone other than the applicant." The argument is not timely. In any event, the argument fails. The policy was issued on the life of Christie Cavanaugh, who was the principal applicant for the policy.

## V. ORDER

IT IS THEREFORE ORDERED that Defendant's Motion for Choice of Law Ruling (docket number 142) is **GRANTED** as follows: Florida substantive law will apply in resolving this dispute.

DATED this 1st day of March, 2011.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA